## BARECO OIL CO. v. ALEXANDER.
### No. 16.

District Court, N. D. Iowa, Central Division.
May 7, 1940.

Price, Rider & Keefe, of Fort Dodge, Iowa, for plaintiff.

D. M. Kelleher, of Fort Dodge, Iowa, for defendant.

SCOTT, District Judge.

The above entitled cause comes up on a motion to dismiss on the ground that plaintiff's complaint does not affirmatively show jurisdiction of this Court for that the action is brought by Bareco Oil Company, alleged to be a successor in interest to Barnsdall Refining Corporation, which had by written contract constituted the defendant, Alexander, its agent, to conduct a branch of its oil business at Pocahontas, Iowa, and while it is alleged that the plaintiff corporation was organized under the laws of the State of Delaware, the citizenship of Barnsdall Refining Corporation is not alleged, and the action is brought upon a chose in action. How the plaintiff came to succeed to the rights of Barnsdall Corporation is not alleged. The defendant suggests that plaintiff is presumed to hold by assignment and that the complaint is insufficient because of § 24 of the Judicial Code, Title 28 U.S.C.A. § 41. I think the suggestion of counsel for defendant is sound and that the complaint fails to affirmatively disclose jurisdiction, the action being brought on contract by the terms of which it is alleged the defendant under-

took to pay sums of money therein provided for.

Another point not specifically presented by defendant's motion relates to the amount in controversy. The complaint alleges the amount in controversy to be $3,433.99, being the aggregate of three specific items, less a credit. The first item of $1,829.14 is alleged to be for goods, wares and merchandise sold and converted to the defendant's use, belonging to the Barnsdall Refining Corporation. The second item of $664.57 is alleged to be for a shortage in cash due Barnsdall Refining Corporation, as proceeds from the sale of products, for which defendant failed to account, "and also returned checks of customers, which checks were issued in payment for goods purchased of said agent and later returned as dishonored by the banks on which they were drawn." The third item is for $1,264.69, it being alleged that while acting as agent for Barnsdall Refining Corporation, defendant extended credit to certain customers on purchases made by them, which accounts were uncollectible and which under the provisions of Paragraph V of the written contract are due to said corporation and to plaintiff as successor in interest. The complaint then alleges a credit due defendant in the sum of $324.41, making net amount due from defendant to plaintiff, $3,433.99.

The right of the plaintiff to recover from Alexander, former agent of Barnsdall Refining Corporation, rests upon Paragraphs IV and V of the contract. These paragraphs are as follows:

"IV. *Holdback.* The Company shall retain five per cent (5%) of monthly commission due the Agent, and the amount so retained shall be paid the Agent when he leaves the employ of the Company, less deduction for bad unauthorized accounts and shortages; provided, however, that the Agent shall be reimbursed for said deductions in the event and at such time as accounts deducted shall be recovered."

"V. *Credits.* Any credit sales made by the Agent to customers to whom he has not been specifically authorized in writing by the Company to make credit sales, shall be on his personal responsibility. The acceptance of invoices by the Company covering such unauthorized sales shall not constitute any waiver by the Company of this provision. All such accounts must be remitted for by the Agent before the end of the month in which sale is made, and if

not so remitted may be deducted from any funds then or thereafter due the Agent. The Agent shall in like manner be responsible for any account whether authorized or not, which is disputed, and the deliveries of which are not fully evidenced by the proper signature of the purchaser."

As I interpret these provisions, liability of the former agent rests upon his unauthorized acts in making sales on credit. Paragraph IV provides for a holdback of commission to cover "bad unauthorized accounts and shortages". Paragraph V by its provisions holds the agent responsible for all credit sales not specifically authorized in writing by the Company. Liability, therefore, under either of these paragraphs would seem to rest upon unauthorized credit sales, unless the words "and shortages" in Paragraph IV be held to cover shortages and cash collected. I find no provision of the contract prohibiting the agent making cash sales and accepting checks of responsible customers in closing the transactions. I think it cannot be assumed in the light of modern custom that the agent must in all cash transactions demand coin or currency. Neither do I find any provision in the contract imposing liability on the agent to make good dishonored checks. I do not overlook the principle that the agent would be liable for negligently accepting checks of persons of whose bad financial standing he had knowledge or notice. But there is no alleged claim of negligence in this case. Now inasmuch as it does not appear in connection with the $664.57 how much thereof is based upon dishonored checks, and if such dishonored checks equaled or exceeded $433.99, the amount in controversy not patentably colorable would fail to exceed the sum or value of $3,000.

The motion also challenges the sufficiency of the complaint because of a failure upon the part of plaintiff's counsel to conform to Rule 24 of the Rules of the United States District Court for the Northern District of Iowa by failing to type or print the signature of attorneys under their names, and also to conform to Rule 11 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, by inserting their addresses in connection with their signature. While such dereliction might warrant the striking of the pleading, I hardly think it sufficient to justify the dismissal of the case.

Because of the failure to show the citizenship of Barnsdall Refining Corporation and the failure to definitely show the amount involved to exceed $3,000, the defendant's motion will be sustained, and the plaintiff's complaint is ordered dismissed for want of jurisdiction, with leave, however, to present an amended and substituted complaint with application to reinstate within twenty days from the receipt of notice of this ruling, such application to be presented on the June Motion Day to be held in the United States Court Room in Sioux City, Iowa, at 10 o'clock A. M., on the first Tuesday in June proximo.

Done and ordered this 7th day of May, 1940, at Sioux City, Iowa, to be entered of record in the Central Division.